# 25-2978

## United States Court of Appeals
*for the*
## Second Circuit

MAURA O'NEILL,

*Plaintiff-Appellant,*

– v. –

NYU LANGONE HOSPITAL - LONG ISLAND, NEW YORK-PRESBYTERIAN QUEENS HOSPITAL, LENOX HILL HOSPITAL,

*Defendants-Appellees,*

CITY OF NEW YORK,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

# BRIEF FOR DEFENDANT-APPELLEE NEW YORK-PRESBYTERIAN QUEENS HOSPITAL

STEVEN V. DEBRACCIO
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
*Attorneys for Defendant-Appellee New York-Presbyterian Queens Hospital*
200 Great Oaks Boulevard, Suite 228
Albany, New York 12203
(518) 449-8893

COUNSEL PRESS (800) 4-APPEAL • (515435)

## Rule 26.1 Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1(a), NYP Community Programs, Inc. is the sole corporate parent of New York-Presbyterian Queens. No publicly held corporation owns 10% or more of New York-Presbyterian Queens.

# Table of Contents

**Page**

Rule 26.1 Disclosure Statement ........ i

Table of Authorities ........ iv

Statement of Issues Presented for Review ........ 1

Statement of the Case ........ 2

A. Plaintiff's Initial and First Amended Complaint ........ 2

B. Plaintiff's Proposed Second Amended Complaint and Magistrate Levy's Report and Recommendation on Plaintiff's Motion for Leave to Amend ........ 3

C. Judge Kovner's Decision and Order Adopting the Report and Recommendation ........ 5

Summary of the Argument ........ 7

Standard of Review ........ 10

Argument ........ 12

Point I

The District Court properly denied plaintiff's motion to file a second amended complaint as plaintiff's proposed second amended complaint failed to plead a claim upon which relief could be granted ........ 12

A. Standards on Motions for Leave to Amend Pleadings ........ 12

B. Plaintiff's First Three Arguments on Appeal ........ 13

C. Plaintiff's proposed second amended complaint fails to plead a claim for civil RICO ........ 18

D. Plaintiff's proposed second amended complaint fails to plead a claim under the Americans with Disabilities Act and Rehabilitation Act ........ 22

E. Plaintiff's proposed second amended complaint fails to plead a claim for defamation ........ 25

F. Plaintiff's proposed second amended complaint fails to plead a claim for breach of fiduciary duty ....................28

G. Plaintiff's proposed second amended complaint fails to plead a claim for fraud ....................32

H. Plaintiff's proposed second amended complaint fails to plead a claim for fraudulent concealment ....................39

I. Plaintiff's proposed second amended complaint fails to plead a claim intentional infliction of emotional distress ....................44

J. Plaintiff's Arguments Regarding Futility ....................50

Point II

Alternatively, plaintiff's motion for leave to file a second amended complaint should be denied as it was made in bad faith ....................52

Point III

Plaintiff's Rule 60(b) motion objections are unpreserved on appeal and in any event, are meritless ....................55

Conclusion ....................56

## Table of Authorities

**Page(s)**

**Cases:**

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ....................................................................................33

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,
483 U.S. 143 (1987)..............................................................................................21

*Alvarado v. Mt. Pleasant Cottage Sch. Dist.*,
404 F. Supp. 3d 763 (S.D.N.Y. 2019) ........................................................ 26, 27

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ..................................................................................10

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983) ....................................................................................40

*Arrington v. N.Y. Times Co.*,
434 N.E.2d 1319 (N.Y. 1982).......................................................................... 31-32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................... 12-13, 42

*Balintulo v. Ford Motor Co.*,
796 F.3d 160 (2d Cir. 2015) ................................................................... 12, 13, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................... 13, 42

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)..............................................................................................56

*Brass v. Am. Film Technologies, Inc.*,
987 F.2d 142 (2d Cir. 1993) ..................................................................................39

*Brown v. Plata*,
563 U.S. 493 (2011)..............................................................................................15

*Bugliotti v. Republic of Argentina*,
No. 24-2950, 169 F.4th 344, 2026 U.S. App. LEXIS 6848,
2026 WL 643747 (2d Cir. Mar. 9, 2026)...........................................................21

*Cannell v. Med. & Surgical Clinic, S.C.*,
315 N.E.2d 278 (Ill. Ct. App. 1974) ....................................................................30

*Cannon v. Univ. of Chicago*,
441 U.S. 677 (1979) ............ 14

*Cardona v. Cmty. Access, Inc.*,
No. 11-cv-4129 (MKB), 2013 U.S. Dist. LEXIS 10778
(E.D.N.Y. Jan. 25, 2013) ............ 45

*Celle v. Filipino Reporter Enterps. Inc.*,
209 F.3d 163 (2d Cir. 2000) ............ 26

*CFPB v. MoneyGram Int'l, Inc.*,
22 Civ. 3256 (KPF), 2025 U.S. Dist. LEXIS 12747, 2025 WL 297389
(S.D.N.Y. Jan. 24, 2025) ............ 51

*Chaffee v. Syracuse City Sch. Dist.*,
No. 5:22-cv-1077 (BKS/ML), 2023 U.S. Dist. LEXIS 165842,
2023 WL 8526787 (N.D.N.Y. Sept. 15, 2023) ............ 28

*Chanko v. Am. Broadcasting Co., Inc.*,
49 N.E.3d 1171 (N.Y. 2016) ............ 45

*Chenayil v. Gulati*,
169 F.3d 168 (2d Cir. 1999) ............ 32

*Clark v. New York City Hous. Auth.*,
No. 20 Civ. 251 (PAE) (GWG), 2022 U.S. Dist. LEXIS 165555
(S.D.N.Y. Sept. 14, 2022) ............ 39

*Cohen v. United States*,
23-cv-08099 (NSR) (VR), 2025 U.S. Dist. LEXIS 178326,
2025 WL 2611680 (S.D.N.Y. Sept. 9, 2025) ............ 51

*Cook v. Optimum/Ideal Mgrs., Inc.*,
473 N.E.2d 334 (Ill. Ct. App. 1984) ............ 29, 30

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ............ 22

*Costin v. Glens Falls Hosp.*,
103 F.4th 946 (2d Cir. 2024) ............ 23, 25

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000) ............ 56

*D.K. v. Teams*,
260 F. Supp. 3d 334 (S.D.N.Y. 2017) ............ 23

*D'Elia v. Menorah Home & Hosp. for the Aged & Infirm*,
859 N.Y.S.2d 224 (App. Div. 2008)....................31

*Davis v. Rodriguez*,
364 F.3d 424 (2d Cir. 2004)....................20

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001)....................19

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987)....................43

*Doe v. Am. Broadcasting Co.*,
543 N.Y.S.2d 455 (App. Div. 1989)....................45

*Doe v. Cmty. Health Plan-Kaiser Corp.*,
709 N.Y.S. 2d 215 (App. Div. 2000)....................44

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................25

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................33

*Erickson v. Pardus*,
551 U.S. 89 (2007)....................13

*Estelle v. Gamble*,
429 U.S. 97 (1976)....................13

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004).................... 32, 33

*Fischer v. Forrest*,
968 F.3d 216 (2d Cir. 2020).................... 11, 16, 53

*Fossil Grp., Inc. v. Angel Seller LLC*,
627 F. Supp. 3d 180 (E.D.N.Y. 2022)....................19

*Franco v. Diaz*,
51 F. Supp. 3d 235 (E.D.N.Y. 2014)....................54

*Garone v. Roberts' Technical & Trade School, Inc.*,
366 N.Y.S.2d 129 (App. Div. 1975)....................30

*Germain v. M & T Bank Corp.*,
111 F. Supp. 3d 506 (S.D.N.Y. 2015) ....................26

*Gov't Emps. Ins. v. Landow*,
No. 21-CV-1440 (NGG) (RER), 2022 U.S. Dist. LEXIS 57715,
2022 WL 939717 (E.D.N.Y. Mar. 29, 2022)....................42

*Gray v. Schenectady City School Dist.*,
927 N.Y.S.2d 442 (App. Div. 2011).................... 48, 49, 50

*Grayson v. Quicksilver Capital LLC*,
No. 22-cv-3519 (LDH), 2022 U.S. Dist. LEXIS 241469
(E.D.N.Y. Dec. 13, 2022) ....................21

*Great Am. Audio Corp. v. Metacom, Inc.*,
938 F.2d 16 (2d Cir. 1991) ....................20

*Green v. City of New York*,
465 F.3d 65 (2d Cir. 2006) ....................23

*Holmes v. Apple, Inc.*,
No. 17 Civ. 4557 (ER), 2018 U.S. Dist. LEXIS 122792
(S.D.N.Y. July 23, 2018) ....................34

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009) ....................52

*Horn v. Med. Marijuana, Inc.*,
80 F.4th 130 (2d Cir. 2023) ....................19

*Howell v. N.Y. Post Co., Inc.*,
612 N.E.2d 699 (N.Y. 1993).................... 31, 44

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011) ....................12

*Jgiap RH 160 LLC v. Cri Holding Corp.*,
No. 21-cv-2489, 2023 U.S. Dist. LEXIS 144781
(E.D.N.Y. Aug. 16, 2023)....................20

*JPMorgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) .................... 25, 55

*Karaduman v. Newsday, Inc.*,
416 N.E.2d 557 (N.Y. 1980)....................31

*Katara v. D.E. Jones Commodities, Inc.*,
835 F.2d 966 (2d Cir. 1987) ....................................................................................32

*Kelley v. Apria Healthcare, LLC*,
232 F. Supp. 3d 983 (E.D. Tenn. 2017)....................................................................24

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)....................................................................................................21

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993) ........................................................................... 25, 55

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012) ......................................................................................20

*Krist v. Kolomobos Rest., Inc.*,
688 F.3d 89 (2d Cir. 2012) ........................................................................................23

*Lanza v. Merrill Lynch & Co.*,
154 F.3d 56 (2d Cir. 1998) ........................................................................................20

*Lohan v. Take-Two Interactive Software, Inc.*,
97 N.E.3d 389 (N.Y. 2018).........................................................................................31

*Lucente v. IBM Corp.*,
310 F.3d 243 (2d Cir. 2002) ......................................................................................12

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013) ......................................................................................22

*M.F. v. State Exec. Dep't Div. of Parole*,
640 F.3d 491 (2d Cir. 2011) ......................................................................................14

*Mackensworth v. S.S. Am. Merchant*,
28 F.3d 246 (2d Cir. 1994) ........................................................................................52

*Mala v. Crown Bay Marina, Inc.*,
704 F.3d 239 (3d Cir. 2013) ......................................................................................39

*Mario v. P & C Food Mkts.*,
313 F.3d 758 (2d Cir. 2002) ..................................................................... 10-11

*Martin v. Duffy*,
858 F.3d 239 (4th Cir. 2017) .....................................................................................11

*McDonald v. City of New York*,
No. 20-cv-4614 (MKB), 2022 U.S. Dist. LEXIS 84310
(E.D.N.Y. May 10, 2022) ....................................................................21

*Meadows v. United Servs.*,
963 F.3d 240 (2d Cir. 2020) ....................................................................28

*Miller v. Brightstar Asia, Ltd.*,
43 F.4th 112 (2d Cir. 2022) ....................................................................11

*Modern Settings v. Prudential-Bache Sec.*,
602 F. Supp. 511 (S.D.N.Y. 1984) ..........................................................43

*Moore v. PaineWebber*,
189 F.3d 165 (2d Cir. 1999) ....................................................................19

*Moss v. Morgan Stanley, Inc.*,
719 F.2d 5 (2d Cir. 1983) ........................................................................19

*Murphy v. American Home Prods. Corp.*,
448 N.E.2d 86 (N.Y. 1983)........................................................................44

*Mustafa v. Chevron Corp.*,
770 F.3d 170 (2d Cir. 2014) ............................................................ 13, 17

*Nambiar v. The Cent. Orthopedic Grp., LLP*,
158 F.4th 349 (2d Cir. 2025) ........................................................... *passim*

*NCUA Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018) ....................................................................51

*Nautilus Ins. Co. v. 93 Lounge Inc.*,
No. 14-cv-01029 (KAM)(ST), No. 15-cv-0166 (KAM)(ST),
2017 U.S. Dist. LEXIS 49539 (E.D.N.Y. Mar. 31, 2017)...................................29

*Neal v. Asta Funding, Inc.*,
13 CV 2176 (VB), 2014 U.S. Dist. LEXIS 113142, 2014 WL 3887760
(S.D.N.Y. June 17, 2014)........................................................................ 26, 27

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) ......................................................................56

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014) ............................................................... 12, 51

*Niles v. Pan Am. Rys.*,
697 Fed. App'x 94 (2d Cir. 2017) ....................29

*O'Hara v. Weeks Marine, Inc.*,
294 F.3d 55 (2d Cir. 2002) .................... 25, 55

*Olsen v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) ....................32

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*,
948 N.Y.S.2d 24 (App. Div. 2012)....................39

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d Cir. 1994) ....................56

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019) ....................26

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
634 N.E.2d 189 (N.Y. 1994)....................24

*Pangburn v. Culbertson*,
200 F.3d 65 (2d Cir. 1999) ....................12

*Pastenack v. Lab. Corp. of Am. Holdings*,
807 F.3d 14 (2d Cir. 2015) ....................24

*Perry v. Rockmore*,
228 N.Y.S.3d 753 (App. Div. 2025)....................31

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024) .................... 39-40

*Pliler v. Ford*,
542 U.S. 225 (2004)....................39

*Powell v. Nat'l Bd. of Med. Exam'rs*,
364 F.3d 79 (2d Cir. 2004) ....................23

*Quarantino v. Tiffany & Co.*,
71 F.3d 58 (2d Cir. 1995) ....................51

*Radin v. Tun*,
No. 12 Civ. 1393 (ARR) (VMS), 2015 U.S. Dist. LEXIS 102095
(E.D.N.Y. July 17, 2015).................... 33, 34

*Rajaratnam v. Motley Rice, LLC*,
449 F. Supp. 3d 45 (E.D.N.Y. 2020) ....................................................................20

*Raspente v. Nat'l R.R. Passenger Corp.*,
111 F.3d 239 (2d Cir. 1997) ...........................................................................29

*Rich v. Fox News Network, LLC*,
939 F.3d 112 (2d Cir. 2019) ........................................................................ 45, 46

*Ross v. Cmty. Gen. Hosp.*,
541 N.Y.S.2d 246 (App. Div. 1989)...................................................................30

*SanMiguel v. Grimaldi*,
___ N.E.3d ___, ___, 2025 N.Y. LEXIS 1767 (N.Y. Oct. 21, 2025) ............ 30-31

*Schildhaus v. Moe*,
335 F.2d 529 (2d Cir. 1964) ........................................................................ 55, 56

*Scollar v. City of New York*,
74 N.Y.S.3d 173 (App. Div. 2018).............................................................. 46, 47, 50

*Sharp v. CNA Lloyds*,
No. H-92-2308, 1992 U.S. Dist. LEXIS 21143 (S.D. Tex. Dec. 22, 1992).........50

*Shelton v. Ciox Health, LLC*,
No. 1:17-cv-808 (ENV) (LB), 2018 U.S. Dist. LEXIS 202798,
2018 WL 4211447 (E.D.N.Y. July 16, 2018)............................................... 28, 29

*Simcuski v. Saeli*,
377 N.E.2d 713 (N.Y. 1978).............................................................................30

*Slainte Invs. Ltd. P'Ship v. Jeffrey*,
142 F. Supp. 3d 239 (D. Conn. 2015)........................................................... 40, 41

*Specht v. City of New York*,
15 F.4th 594 (2d Cir. 2021) ............................................................................44

*Spinnato v. Unity of Omaha Life Ins. Co.*,
322 F. Supp. 3d 377 (E.D.N.Y. 2018) ...............................................................33

*Tocker v. Philip Morris Cos.*,
470 F.3d 481 (2d Cir. 2006) ........................................................................ 12, 51

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979).........................................................................................14

*Traguth v. Zuck*,
710 F.2d 90 (2d Cir. 1983) ....................................................................13

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006) ..................................................................13

*U.S. ex rel. Tiesinga v. Dianon Sys.*,
231 F.R.D. 122 (D. Conn. 2005) .............................................................42

*United States ex rel. Chorches v. Am. Med. Response, Inc.*,
865 F.3d 71 (2d Cir. 2017) ........................................................ 36, 37, 38, 40

*Weller v. NYU Langone Health Sys.*,
2025 U.S. Dist. LEXIS 124171, 2025 WL 1795397
(E.D.N.Y. June 30, 2025) .......................................................................17

*West v. Atkins*,
487 U.S. 42 (1988).................................................................................15

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990) ................................................... 38, 42, 43

*Whitney v. Citibank, N.A.*,
782 F.2d 1106 (2d Cir. 1986) ................................................................28

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021)..................................................................................39

*Yerkyn v. Yakovlevich*,
164 F.4th 224 (2d Cir. 2026) ..................................................................52

*Youngbloods v. BMG Music*,
No. 07 Civ. 2394, 2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011) ...........54

**Statutes and Other Authorities:**

18 U.SC. § 1962 ....................................................................... 18, 19

28 U.S.C. § 636(b)(1)...............................................................................10

28 U.S.C. § 636(b)(1)(B) .........................................................................10

29 U.S.C. § 794(a) ...................................................................................25

42 U.S.C. § 12131(1) ...............................................................................23

42 U.S.C. § 12132 ....................................................................................23

42 U.S.C. § 12182(a) ....................23
42 U.S.C. § 1395bb(a) ....................16
42 U.S.C. § 1395cc(f) ....................16
42 U.S.C. § 1395dd(a) ....................17
42 U.S.C. § 1395dd(b) ....................17
42 U.S.C. § 1395dd(c) ....................17
42 U.S.C. § 1395dd(d)(3)(C) ....................17
42 U.S.C. § 1395dd(g) ....................17
42 U.S.C. § 1983 .................... 15, 21
Fed. R. App. P. 3(c)(6) ....................55
Fed. R. Civ. P. 8 ....................26
Fed. R. Civ. P. 8(a) ....................26
Fed. R. Civ. P. 8(a)(2) ....................56
Fed. R. Civ. P. 9(b) .................... *passim*
Fed. R. Civ. P. 15 .................... 9, 52
Fed. R. Civ. P. 15(a) ....................50
Fed. R. Civ. P. 15(a)(1) ....................51
Fed. R. Civ. P. 15(a)(2) .................... 9, 51
Fed. R. Civ. P. 15(d) .................... 9, 50, 51
Fed. R. Civ. P. 18 ....................52
Fed. R. Civ. P. 18(a) .................... 9, 50, 51, 52
Fed. R. Civ. P. 60(b) .................... *passim*
Fed. R. Civ. P. 72(b) .................... 10, 11
Fed. R. Civ. P. 72(b)(2) ....................10

## Statement of Issues Presented for Review

Defendant-appellee New York-Presbyterian Queens (NYPQ) submits this brief in response to the appeal by plaintiff-appellant Maura O'Neill from a memorandum decision and order from the United States District Court for the Eastern District of New York (Rachel P. Kovner, J.), entered October 27, 2025, which adopted the report and recommendation of Magistrate Judge Robert Levy, which recommended denial of plaintiff's motion to file a second amended complaint and denied her motion for relief under Federal Rule of Civil Procedure 60(b), specifically vacatur of the District Court's prior decision granting NYPQ's motions to dismiss her first amended complaint.

The Southern District properly denied plaintiff's motion for leave to file a second amended complaint. As to plaintiff's claim for civil Racketeer Influenced and Corrupt Organizations Act (RICO), the District Court properly found no clear error as plaintiff failed to raise any specific objections to the report and recommendation. That conclusion precludes any appellate review. In any event, plaintiff's second amended complaint for all its length, still fails to plead a claim for relief. As such, plaintiff's proposed second amended complaint was properly denied as futile. Moreover, plaintiff's Rule 60(b) motion was properly denied as plaintiff essentially reiterated that the court erred in reaching a decision, which is not a proper basis for a Rule 60(b) motion.

## Statement of the Case

### A. Plaintiff's Initial and First Amended Complaint

On June 22, 2023, plaintiff commenced this action against NYPQ, as well as defendants-appellees NYU Langone Hospitals (NYU Langone) and Lenox Hill Hospital (Lenox Hill). A[1] 6–7; DA[2] 1. Plaintiff alleges that nonparty Christopher Wilder was her coworker at Deutsche Bank Securities, Inc., from 2004–2007 and that Wilder sexually harassed her, stalked her, broke into her home, drugged her, and raped her. A 7, 20–21. As is relevant to this appeal, plaintiff alleged that these hospitals violated her rights by failing to take "proper medical histories," improperly using "laboratory and ancillary procedures," making improper "diagnos[es] or differential diagnoses," creating fraudulent medical records, denying her access to health information, and speaking to "Wilder's agents about [her] without obtaining [her] consent." A 21.

Plaintiff then filed a first amended complaint on September 14, 2023, adding the City of New York as a defendant. A 8, 21; DA 73. Plaintiff alleged claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), civil conspiracy, and invasion of constitutional privacy rights. A 21. NYPQ (and the

---

[1] A refers to plaintiff's appendix, submitted on March 12, 2026.

[2] DA refers to NYPQ's appendix, submitted on April 16, 2026.

other hospital defendants) moved to dismiss plaintiff's complaint for failure to plead a cause of action and that motion was granted on September 17, 2024. A 9–10, 21–22. The District Court granted that motion. DA 179. As part of the District Court's order, the Court gave plaintiff the opportunity to "file a letter or motion seeking leave to file a second amended complaint" and "instructed plaintiff that any such letter or motion must 'explain why the second amended complaint cures the deficiencies identified in th[e] [prior dismissal] order." A 22.

### B. Plaintiff's Proposed Second Amended Complaint and Magistrate Levy's Report and Recommendation on Plaintiff's Motion for Leave to Amend

Plaintiff did not file a letter or motion explaining why a second amended complaint would cure the defects in her first amended complaint. *Id.* Instead, she filed a 182-page second amended complaint. *Id.* The District Court construed that filing as a motion to file a proposed second amended complaint. *Id.* Plaintiff's second amended complaint alleges claims for fraud, fraudulent concealment, intentional infliction of emotional distress, defamation, breach of fiduciary duty, violation of Americans with Disabilities Act, violation of the civil RICO statute. *Id.* Defendants opposed the motion in part because the proposed second amended complaint failed to plead a claim for which relief could be granted. *Id.* The District Court referred the motion to Magistrate Judge Robert M. Levy for a report and recommendation. *Id.*

On June 9, 2025, Magistrate Judge Robert M. Levy issued a report and recommendation recommending that the Court deny plaintiff's motion to amend her complaint. *Id.* Judge Levy found that plaintiff failed to state a claim for civil RICO because she did not allege "facts sufficient to plead that defendants participated in the operation or management of any enterprise." A 22–23. Next, Judge Levy found that plaintiff did not state a claim under the Americans with Disabilities Act because she "fail[ed] to allege that she was discriminated against because she was a member of a protected class." *Id.* (citing A 39). Moreover, Judge Levy noted that "a district court may decline to exercise supplemental jurisdiction over state law claims when it 'has dismissed all claims over which it has original jurisdiction, which on its own was sufficient to deny plaintiff's motion for leave to amend.'" *Id.* (citing A 40). In any event, Judge Levy found that even if these state-law claims were considered, "the proposed Second Amended Complaint . . . fail[ed] to state a cause of action as to [them]." *Id.* (citing A 40–44).

On June 23, 2025, plaintiff filed objections to the report and recommendation. A 17. Plaintiff requested leave to file an "additional memorandum of law to address numerous outstanding issues." A 18. On June 25, 2025, the District Court permitted her to file a new memorandum of law to replace but not supplement her prior filing. *Id.* On July 14, 2025, she then filed another memorandum of law with objections to the report and recommendation. A 18, 226–65. She also filed an affidavit containing

among other things, "additions to the Second Amended Complaint . . . to account for new information." A 266–88. On July 28, 2025, NYPQ then submitted its response to plaintiff's objections. A 18. On July 29, 2025, plaintiff filed a letter requesting leave to file reply papers, but on July 30, 2025, that request was denied. *Id.*

### C. Judge Kovner's Decision and Order Adopting the Report and Recommendation

On October 27, 2025, Judge Kovner issued a memorandum and order adopting Magistrate Judge Levy's report and recommendation in full and denying plaintiff's motion to amend her complaint and her motion for relief under Rule 60(b). A 20. The District Court rejected each and every set of objections that plaintiff raised in opposition. A 23–30. Specifically, the District Court ruled that plaintiff failed to raise any specific objections to the report and recommendation regarding the civil RICO claim. A 24–25. Moreover, the District Court concluded that plaintiff failed to plead a claim under the Americans with Disabilities Act, fraud, fraudulent concealment, intentional infliction of emotional distress, defamation, or breach of fiduciary duty. A 25–30.

Finally, the District Court concluded that plaintiff failed to raise any basis under Rule 60(b) to vacate its decision dismissing her first amended complaint. A 30. The District Court explained that plaintiff's arguments on her motion largely reiterated that the court was incorrect, a basis that is properly addressed with a direct

appeal, not a Rule 60(b) motion. A 31. Moreover, the District Court rejected her new claims as an improper basis for a Rule 60(b) motion. *Id.* Finally, with respect to plaintiff's assertion that the District Court "engaged in *ex parte* communication" in reaching its prior conclusion, it concluded that "[t]his accusation is baseless and, at any rate, is not tied to any ground for relief under Rule 60(b)." A 32 (citation omitted).

On November 18, 2025, plaintiff then filed a notice of appeal to this Court. A 34. Notably, plaintiff only appealed the order which "(1) denied Plaintiff's objection to the Magistrate's Report and Recommendations, (2) granted Defendants' motions to dismiss, and (3) closed this case." *Id.*

## Summary of the Argument

The District Court's decision should be affirmed in its entirety. The District Court properly adopted the report and recommendation from Magistrate Judge Levy in its entirety. Plaintiff's motion for leave to file a second amended complaint was properly denied as futile. Plaintiff's proposed second amended complaint fails to plead a claim for relief, and thus, would not survive a Rule 12(b)(6) motion. Based upon this Court's precedent, in such an instance, it is proper for a court to deny leave to amend, even for a *pro se* party such as plaintiff in this case. As is discussed in more detail below, plaintiff's complaint, despite its length, largely consists of unrelated, offensive allegations about nonparties and other public figures, and legal conclusions that NYPQ and the hospital defendants somehow conspired with her former coworker and his attorney to label plaintiff mentally ill and to do so, fraudulently maintained two sets of her records of treatment at their respective facilities and refused to allow her access to the "secret" set of records.

Briefly stated, plaintiff is precluded from litigating her civil RICO claim as she failed to articulate a specific objection to the report and recommendation, but in any event, failed to provide any specific facts plausibly alleging that defendants participated in the operation or management of any enterprise. A 24–25, 39. Plaintiff's Americans with Disabilities Act claim fails to plead a claim because she failed to allege facts plausibly showing that she was discriminated against because

of her disability, and she failed to allege the requirements for a permanent injunction. A 25.

Turning briefly to her state-law claims, she failed to plead a claim for fraud because she failed to plead with particularity under Rule 9(b) the statements that NYPQ allegedly made that were fraudulent, who stated them, when and where they were made, or why they were fraudulent. A 25–27. Her proposed second amended complaint did not fix this defect that the District Court identified in granting dismissal of her first amended complaint. A 26. Next, she failed to plead a claim for fraudulent concealment because she failed to plead particular allegations of a strong inference of fraud, relying only on generalized and conclusory allegations, which are insufficient. A 27.

Next, plaintiff failed to plead a claim for intentional infliction of emotional distress because she failed to allege extreme and outrageous conduct on the part of NYPQ, relying largely on the conduct of nonparties. A 28. Moreover, she failed to plead facts supporting a malicious campaign of harassment as the lion's share of conduct alleged was that of nonparties, not NYPQ. A 28–29. Next, she failed to plead a claim for defamation as she failed to identify the speakers of any allegedly defamatory statements or when the purported defamation occurred. A 29. She failed to plead a claim for breach of fiduciary duty because she failed to support her claim that hospital defendants had a fiduciary duty to provide her with medical records,

and as for her claims regarding privacy, she provides no basis for recovery under the New York State Civil Rights Law, which generally limits such claims to commercial appropriation of likenesses or the dissemination of intimate images, neither of which plaintiff occurred here. *See* A 29–30.

Next, as an alternate basis for affirmance, plaintiff's civil RICO claim is time-barred, and in any event, her motion for leave to file a second amended complaint should be denied in light of her pattern of abusive, offensive, and irrelevant allegations throughout her pleadings in this action.

As for plaintiff's arguments regarding Federal Rule of Civil Procedure 15(d) for supplemental pleadings, she herself described the proposed pleading as an *amended* complaint, bringing it within Rule 15(a)(2)'s requirements, but in any event, courts have also rejected motions to file supplemental pleadings where it would be futile to do so. For the same reasons, any such motion was properly denied. Next, as for plaintiff's Rule 18(a) argument about joinder, this rule does not apply here. This Court has made clear that the appropriate analysis is Rule 15, not Rule 18, when a plaintiff seeks to add claims to a complaint, not new parties.

Finally, plaintiff's Rule 60(b) motion should not be considered on appeal as plaintiff's own notice of appeal limited its consideration to the motion to dismiss and decision and order denying leave to file a second amended complaint. In any event, plaintiff failed to discuss the Rule 60(b) motion in her brief, but even were this Court

to consider the merits, for the reasons discussed in the District Court's opinion, plaintiff alleged no extraordinary circumstances warranting vacatur of the decision dismissing her first amended complaint.

## **Standard of Review**

This Court recently laid out the standard of review from objections to a report and recommendation in *Nambiar v. The Cent. Orthopedic Grp., LLP*, 158 F.4th 349 (2d Cir. 2025). As this Court explained there, when a Magistrate Judge is "referred a dispositive matter, the magistrate judge issues a [report and recommendation] with 'proposed findings of fact and recommendations for the [case's] disposition.'" *Id.* at 358 (quoting 28 U.S.C. § 636(b)(1)(B)). "The parties then have an opportunity to object to the [report and recommendation], in whole or in part." *Id.* (citing Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)). "As to a dispositive matter, any part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge *de novo*." *Id.* (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)). "If a party fails to properly object to the [report and recommendation], the district judge reviews the [report and recommendation] only for clear error." *Id.* at 359 (citing Fed. R. Civ. P. 72(b), advisory committee note to 1983 amend.).

To that end, "[f]ailure to timely object may 'operate[] as a [forfeiture] of further judicial review' of the magistrate judge's decision." *Id.* (quoting *Mario v. P*

*& C Food Mkts.*, 313 F.3d 758, 766 (2d Cir. 2002)). Further, "[a] plaintiff is deemed to have [forfeited] an objection to a magistrate judge's report if he does not present his claims to the district court." *Id.* (quoting *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017)) (citing *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120–21 (2d Cir. 2022)). "In order to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar*, 158 F.4th at 359 (quoting *Martin*, 858 F.3d at 245) (citing *Miller*, 43 F.4th at 120–21). Finally, "[a] proper objection generally may not raise new arguments not previously made before the magistrate judge." *Nambiar*, 158 F.4th at 359 (citing *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020)).

With these standards in mind, the District Court properly denied plaintiff's motion for leave to file a second amended complaint and plaintiff's Rule 60(b) motion.

# Argument

## Point I

### The District Court properly denied plaintiff's motion to file a second amended complaint as plaintiff's proposed second amended complaint failed to plead a claim upon which relief could be granted.

#### A. Standards on Motions for Leave to Amend Pleadings

"[W]hen denial of leave to file a revised pleading is based on a legal interpretation, such as futility, a reviewing court conducts a *de novo* review." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015) (citing *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011)). To be sure, "leave to amend should be freely granted when justice so requires." *Id.* (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (internal quotation marks omitted)). "However, 'leave to amend a complaint may be denied when amendment would be futile.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo*, 796 F.3d at 164–65 (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

Turning to the motion-to-dismiss standard, "[i]n order to survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Id.* at 165 (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]hile a court must accept all of the allegations contained in a complaint as true, 'that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Balintulo*, 796 F.3d at 165 (quoting *Mustafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014)). Of course, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

For the reasons that follow, even considering the allegations in plaintiff's proposed second amended complaint, she has failed to plead a claim upon which relief could be granted, and as such, her motion for leave to amend was properly denied.

**B. Plaintiff's First Three Arguments on Appeal**

Plaintiff's first argument on appeal is that New York law governed her purported advance directive and that hospital defendants and "the DB/Wilder team"

are "claiming the fake 'agent' has a right to do things no patient could do and make self-dealing decisions that show a clear conflict of interest between the agent and principal" and "clearly show the agent and [hospital defendants] intended to harm and abuse [plaintiff]." Brief for Appellant at 32. NYPQ makes no arguments about any advance directives or agents. NYPQ argues (as it did below) that plaintiff's motion for leave to file a second amended complaint was properly denied because (a) doing so would be futile as she still fails to plead a single plausible claim upon which relief could be granted; and (b) plaintiff seeks to do so in bad faith. Plaintiff devotes several pages to advance directives. *See id.* at 32–34. Respectfully, they are completely irrelevant to this appeal.

Next, plaintiff argues that this purported "fake agent" illegally "turned [plaintiff]'s medical records into inadmissible hearsay." Brief for Appellant at 34 (emphasis removed). Plaintiff cites a number of federal code provisions and the legal standard for admissibility of hearsay documents. *See id.* at 35–36. However, even where plaintiff references federal statutes, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979) (internal quotation marks omitted)); *accord M.F. v. State Exec. Dep't Div. of Parole*, 640 F.3d 491, 495 (2d Cir. 2011).

On this point, plaintiff cites *Brown v. Plata*, 563 U.S. 493 (2011). *See* Brief for Appellant at 3. Plaintiff misapplies the specific procedural history of *Brown*. As plaintiff acknowledges, the plaintiffs in *Brown* were incarcerated individuals. *See id.* "To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing, and necessary medical care." *Brown*, 563 U.S. at 510. It is this State-sanctioned deprivation of liberty that triggers constitutional protections, such as the Cruel and Unusual Punishment Clause of the Eighth Amendment, which is redressable in a civil suit for damages under 42 U.S.C. § 1983. *See generally id.* at 510–11.

Plaintiff of course does not allege that defendants or NYPQ imprisoned her in any way, or that defendants "act[ed] under color of state law." *Cf. West v. Atkins*, 487 U.S. 42, 48–51 (1988) (concerning physician *under contract with State to provide medical services to incarcerated individuals* could be sued under 42 U.S.C. § 1983). *Brown* does not aid plaintiff in pleading a cause of action here. For this reason, though plaintiff references "due process" throughout her brief, *see* Brief for Appellant at 25, 29, 31, she does not actually make any constitutional arguments, but in any event, she could not because she did not allege facts plausibly alleging that NYPQ acted under color of state law. *See* 42 U.S.C. § 1983 (2024).

As is a problem throughout plaintiff's brief, she asserts as her third argument, that "appellees violated numerous laws," Brief for Appellant at 36 (emphasis

removed), including Health Insurance Portability and Accountability Act (HIPAA) regulations, as well as 42 U.S.C. § 1395bb (a) (2024) and 42 U.S.C. § 1395cc (f) (2024), just to take two examples. *Id.* at 18, 36. Plaintiff does not provide any argument that any such violation gives right *to a private right of action*. Plaintiff's failure to address this point is clear given her irrelevant statements in her brief that defendants have "admitt[ed] to . . . professional misconduct," Brief for Appellant at 8, "should lose their [New York] licenses to operate healthcare facilities," *id.* at 7, and allegedly violated two New York State criminal statutes, *see id.* at 2. These statements are completely irrelevant to the single issue before this Court on this appeal—whether the District Court properly deny her leave to file a second amended complaint in a civil action against defendants.

Next, although she does not reference a specific argument about it, to the extent she alleges a violation of the Emergency Medical Treatment & Active Labor Act, *see* Brief for Appellant at 16–17, such a claim is unpreserved and would also fail to plead a claim. First, plaintiff did not allege an EMTALA claim in her proposed second amended complaint; she raised it in opposition to the report and recommendation. *See* A 228–29, 241. As NYPQ noted above, "[a] proper objection generally may not raise new arguments not previously made before the magistrate judge," so it is not properly raised on appeal. *Nambiar*, 158 F.4th at 359 (citing *Fischer*, 968 F.3d at 221). In any event, such a claim would also be time-barred.

The statute of limitations of a claim under EMTALA is two years. *See* 42 U.S.C. § 1395dd(d)(3)(C) (2024). Plaintiff alleges conduct on the part of NYPQ taking place on or about December 31, 2017, with respect to plaintiff's rape kit that she claimed had not been run or tested. A 145–46. Thus, plaintiff's initial complaint (even if plaintiff had raised that allegation there), filed on June 22, 2023, is years past the deadline. A 7.

In any event, plaintiff fails to allege specific facts to plausibly claim a violation of the EMTALA. She does not make allegations of a lack of "an 'appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists,'" *Weller v. NYU Langone Health Sys.*, 2025 U.S. Dist. LEXIS 124171, at *5, 2025 WL 1795397 (E.D.N.Y. June 30, 2025) (quoting 42 U.S.C. § 1395dd(a) (2024)), or a failure to 'stabilize' the emergency medical condition before [a] transfer[]," *id.* (quoting 42 U.S.C. § 1395dd(b)-(c)), or "reverse dumping," of "refus[ing] to accept a transfer of a patient requiring its 'specialized capabilities,'" *id.* at *5–6 (quoting 42 U.S.C. § 1395dd(g)). Again, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to plead a cause of action. *Balintulo*, 796 F.3d at 165 (quoting *Mustafa*, 770 F.3d at 176 (internal quotation marks omitted)).

### C. Plaintiff's proposed second amended complaint fails to plead a claim for civil RICO.

At the outset, plaintiff is precluded from appellate review of her civil RICO claim. The District Court concluded that plaintiff's objection to the report and recommendation was that its "conclusion that she failed to state a claim under the RICO statute was 'based on the secret findings of fact and conclusions of law and lies told by [the hospital defendants] and the [Wilder] team on an *ex-parte* basis." A 24. However, her "objections d[id] not challenge any specific aspect of the [report and recommendation]'s analysis" and she "ma[d]e[] no effort to explain which parts of the [report and recommendation [we]re incorrect." *Id.* Even now, on appeal, plaintiff devoted all of one paragraph on page 51 of her brief to her civil RICO claim, which essentially again reiterated that the report's conclusion was "untethered to reality" and were "based on the 'secret findings of fact and conclusions of law' and lies told by [hospital defendants] and the DB/Wilder team on an *ex-parte* basis." Brief for Appellant at 51. As was noted above, by failing to render a specific objection to this finding, plaintiff is precluded from seeking appellate review here. *See Nambiar*, 158 F.4th at 359.

In any event, even on the merits, plaintiff's proposed second amended complaint fails to plead a claim. "To establish a civil RICO claim, 'a plaintiff must show: "(1) a violation of the RICO statute, 18 U.SC. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.""'

*Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 199 (E.D.N.Y. 2022) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).

"A RICO plaintiff has two pleading burdens. First, a plaintiff 'must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Id.* (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). "To plead such a violation, the plaintiff must allege" seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting *Moss*, 719 F.2d at 17). "These seven elements must be adequately alleged 'before turning to the second burden, *i.e.*, invoking RICO's civil remedies.'" *Id.* (quoting *Moss*, 719 F.2d at 17).

"As to the second burden, a civil plaintiff must allege 'that he was "injured in his business or property by reason of a violation of section 1962.""" *Id.* (quoting *Moss*, 719 F.2d at 17); *accord Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 133 (2d Cir. 2023). "In addition, the alleged RICO pattern must be pled with specificity and, in the case of fraud, particularity." *Fossil Grp., Inc.*, 627 F. Supp. 3d at 199 (citing *Moore v. PaineWebber*, 189 F.3d 165, 173 (2d Cir. 1999)). Finally, "[g]ven the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within

the standard of civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts" must "'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" *Jgiap RH 160 LLC v. Cri Holding Corp.*, No. 21-cv-2489, 2023 U.S. Dist. LEXIS 144781, at *14, 2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023) (quoting *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020)).

At the outset, as an alternate ground of affirmance as NYPQ argued below,[3] plaintiff's entire civil RICO claim is time-barred. There is a four-year statute of limitations for civil RICO claims. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150–51 (2d Cir. 2012); *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 59 (2d Cir. 1998). Notably, RICO claims accrue from "when the plaintiff 'discovered or should have discovered the injury[.]'" *Koch*, 699 F.3d at 150 (quoting *Lanza*, 154 F.3d at 59). "The Supreme Court has rejected the 'last predicate act' rule for purposes of the civil RICO statute of limitations under which the statute of limitations would begin to run only after the last predicate act of racketeering was committed; such a rule would, the Court concluded, improperly extend the limitations period indefinitely."

[3] A prevailing party is "entitled to urge affirmance on any basis submitted to the district court and supported by the record, including a basis rejected by the court[.]" *Davis v. Rodriguez*, 364 F.3d 424, 427 n.1 (2d Cir. 2004) (per curiam) (citing *Great Am. Audio Corp. v. Metacom, Inc.*, 938 F.2d 16, 19 (2d Cir. 1991)).

*Grayson v. Quicksilver Capital LLC*, No. 22-cv-3519 (LDH), 2022 U.S. Dist. LEXIS 241469, at *8, 2022 WL 19520822 (E.D.N.Y. Dec. 13, 2022) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997)).

Again, plaintiff lists conduct on the part of NYPQ taking place on or about December 31, 2017, and January 1, 2018, with respect to plaintiff's rape kit that she claimed had not been run or tested. A 81, 145–46. Plaintiff was on notice of NYPQ's conduct at least at that time, and as such, her civil RICO claim is completely time-barred.[4] In fact, it is plaintiff's claim that she recorded her conversations with NYPQ staff precisely because she believed that it was conspiring with Wilder in real-time to falsify her records. A 154, 198. Thus, the date on which plaintiff became aware of the alleged conspiracy between NYPQ and Wilder was the date of her visit; January 1, 2018. A 81. Plaintiff did not file her initial complaint until June 22, 2023, well after the four-year statute of limitations. A 7.

---

[4] Of note, the COVID-19 toll due to then-Governor Cuomo's Executive Order 202.8 does not apply to the RICO claim. While this Court has applied the COVID-19 toll to 42 U.S.C. § 1983, that is so because "state law supplies the statute of limitations for claims under [section] 1983." *McDonald v. City of New York*, No. 20-cv-4614 (MKB), 2022 U.S. Dist. LEXIS 84310, at *6–7, 2022 WL 1469395 (E.D.N.Y. May 10, 2022). By contrast, the United States Supreme Court ruled that there was a uniform federal four-year statute of limitations for RICO actions. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 150 (1987) ("Unlike § 1983, however, we believe that it is a *federal* statute that offers the closest analogy to civil RICO. The Clayton Act[.]"). Thus, the state COVID-19 toll does not apply. Although notably, even if one were to add the 228-day toll, *see Bugliotti v. Republic of Argentina*, No. 24-2950, 169 F.4th 344, 2026 U.S. App. LEXIS 6848, at *18–20, 2026 WL 643747 (2d Cir. Mar. 9, 2026), plaintiff's claim is still about nine months too late.

Even aside from timeliness issues, returning to the pleading itself, plaintiff has not come close to alleging the necessary factual allegations sufficient to plead a civil RICO claim. Plaintiff alleges the commission of mail and wire fraud as the pattern of racketeering activity. A 194, 199. "The 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). Plaintiff abundantly fails to meet this standard.

The District Court correctly ruled that plaintiff did not adequately allege that NYPQ "participated in the operation or management of any enterprise." A 39. Plaintiff thus failed to plead a plausible claim.

**D. Plaintiff's proposed second amended complaint fails to plead a claim under the Americans with Disabilities Act and Rehabilitation Act.**

Next, plaintiff's second amended complaint fails to plead a plausible claim under Titles II or III of the Americans with Disabilities Act or Rehabilitation Act. *See* A 113. Starting with Title II of the Americans with Disabilities Act, it provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132 (2024); *see Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004). Critically, "Title II applies to any state or local government or instrumentality of a state or local government." *Powell*, 364 F.3d at 85 (citing 42 U.S.C. § 12131(1)). Plaintiff has failed to allege facts to plead that NYPQ is a state or local government, or an instrumentality of a state or local government. *See Green v. City of New York*, 465 F.3d 65, 78–79 (2d Cir. 2006) (dismissing claim against private hospital under Title II because hospital was "not a creature of any governmental entity" and was a "private, and not a public, entity"). Moreover, plaintiff failed to allege facts to plausibly claim that she was not provided medical records *because of* her disability. *See* 42 U.S.C. § 12132; *Powell*, 364 F.3d at 85; *D.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017).

As to Title III of the Americans with Disabilities Act, it "prohibits, as a '[g]eneral rule,' discrimination against an individual 'on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, . . . or operates a place of public accommodation." *Krist v. Kolomobos Rest., Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(a) (2024)). Like her Title II claim, plaintiff fails to plead any facts to plausibly assert that she was denied access to her records because of her disability. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024).

Plaintiff's entire argument on appeal with respect to her Americans with Disabilities Act claim is essentially that the Health Insurance Portability and Accountability Act (HIPAA) and Joint Commission standards can be relied upon to "provide evidence of standards in tort actions" and "show how [hospital defendants] HIPAA violations constituted misconduct." *See* Brief for Appellant at 37–39 (citations omitted). Plaintiff cites *Kelley v. Apria Healthcare, LLC*, 232 F. Supp. 3d 983 (E.D. Tenn. 2017) in support. Respectfully, plaintiff overinflates the significance of *Kelley*. All *Kelley* stands for as to this issue is that Centers for Medicare and Medicaid Services and Joint Commission standards could form the standard of care in a *negligence per se*, a tort which necessarily requires allegations that the defendant breached a duty of care and specifically what the scope of that duty of care is. *See generally Pastenack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015); *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 192 (N.Y. 1994). Plaintiff did not plead any causes of action for negligence here, so her references to the Joint Commission or HIPAA are entirely irrelevant.

Furthermore, with respect to her request for a permanent injunction, plaintiff did not satisfy any of the requirements for such equitable relief, namely that (1) plaintiff suffered irreparable harm; (2) remedies at law, including monetary compensation, are inadequate to compensate her; (3) the balance of hardships weighs

in her favor; and (4) a permanent injunction would not harm the public interest. *See* A 39–40 (citing *eBay Inc. v MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Finally, as for plaintiff's claim under the Section 504 of the Rehabilitation Act, she does not raise any such claim on appeal, so she has abandoned any such claim. "[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief." *JPMorgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (citing *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 67 n.5 (2d Cir. 2002); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). In any event, similar to her claim under Title III of the Americans with Disabilities Act, that statute prohibits "any program or activity receiving Federal financial assistance" to discriminate against an individual "solely by reason of his or her disability." *Costin*, 103 F.4th at 953 (quoting 29 U.S.C. § 794(a) (2024)). Likewise, plaintiff failed to allege facts that plausibly plead that NYPQ created a second set of records and/or refused to provide them to plaintiff solely because of her perceived disability. As such, these allegations fail to plausibly plead a claim as well.

### E. Plaintiff's proposed second amended complaint fails to plead a claim for defamation.

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages

or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citing *Celle v. Filipino Reporter Enterps. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)). The plaintiff must "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (quoting *Neal v. Asta Funding, Inc.*, 13 CV 2176 (VB), 2014 U.S. Dist. LEXIS 113142, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014)).

Plaintiff argues that the report and recommendation's citation to *Neal* was error. *See* Brief for Appellant at 39. Plaintiff's factual distinction is immaterial. She argues that New York's "public policy required any 'fake' agent to report his activities regarding [plaintiff] to [plaintiff]" including his "lawyer's phone calls to various courts and judges, including the phone call to the Eleventh Circuit on or about October 16, 2023 to have [plaintiff]'s appeal dismissed." *Id.* Respectfully, there is no "public policy" exception to the pleading rules for a defamation cause of action. Additionally, plaintiff argues that "in federal cases based on diversity jurisdiction, the general pleading standard in FRCP 8(a) applies to defamation claims." Brief for Appellant at 39–40 (citing *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 537 (S.D.N.Y. 2015)). However, the *Alvarado* case to which the report referred specifically referenced Rule 8's "liberal pleading standards" in

concluding that a plaintiff must still "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado*, 404 F. Supp. 3d at 790 (quoting *Neal*, 2014 U.S. Dist. LEXIS 113142, 2014 WL 3887760, at *3). Contrary to plaintiff's assertion otherwise, the District Court did not "h[o]ld [her] to an inappropriate standard." Brief for Appellant at 40; *see* A 29.

Finally, as for her claim that she "added information about the time to the Affidavit," Brief for Appellant at 40 (citing A 290–91); *see* A 175–76, plaintiff still fails to identify the allegedly defamatory statements, the person who made the statements, and the third parties to whom the statements were published. Thus, plaintiff still fails to plead a claim for defamation. *See Alvarado*, 404 F. Supp. 3d at 790.

### F. Plaintiff's proposed second amended complaint fails to plead a claim for breach of fiduciary duty.

Next, the elements of a breach of fiduciary duty claim are "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach." *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986). Once again, plaintiff's breach of fiduciary duty claims center on NYPQ's alleged failure to turn over plaintiff's medical records to her (and failure to preserve a urine sample). A 82, 178–81. Plaintiff does not contest that a HIPAA violation does not give rise to a private right of action. *See Meadows v. United Servs.*, 963 F.3d 240, 244 (2d Cir. 2020). And plaintiff fails to allege or argue where this purported fiduciary duty comes from. In any event, crime victims do not have a special relationship with hospitals (or even law enforcement) in the interest of prosecuting an alleged criminal act. *See generally Chaffee v. Syracuse City Sch. Dist.*, No. 5:22-cv-1077 (BKS/ML), 2023 U.S. Dist. LEXIS 165842, at *7 n.3, 2023 WL 8526787 (N.D.N.Y. Sept. 15, 2023) (explaining that "federal criminal statutes found in Title 18 of the United States Code do not provide a basis for a private right of action, but, rather, must be prosecuted by the Attorney General." (citations omitted)).

The District Court cited *Shelton v. Ciox Health, LLC*, No. 1:17-cv-808 (ENV) (LB), 2018 U.S. Dist. LEXIS 202798, at *12, 2018 WL 4211447, at *5 (E.D.N.Y. July 16, 2018) in support of its decision. A 44. As the District Court explained,

"this court has already held that medical providers have no fiduciary duty to provide medical records to patients." *Id.* (citing *Shelton*, 2018 U.S. Dist. LEXIS 202798, at *12, 2018 WL 4211447, at *5). Plaintiff once again argues on appeal that *Shelton* is distinguishable because NYPQ "and other healthcare providers are licensed by the state of [New York] and have statutory duties Ciox does not have." Brief for Appellant at 40. However, as NYPQ argued below, that distinction is immaterial. Bartenders, for example, have special duties that are different than railroad operators (such as under the Dram Shop Act), *see Nautilus Ins. Co. v. 93 Lounge Inc.*, No. 14-cv-01029 (KAM)(ST), No. 15-cv-0166 (KAM)(ST), 2017 U.S. Dist. LEXIS 49539, at *18 (E.D.N.Y. Mar. 31, 2017), but both, as is relevant to a slip and fall on their property, have the same duty as landowners. *See Niles v. Pan Am. Rys.*, 697 Fed. App'x 94, 95 (2d Cir. 2017) (summary order) ("[A] railroad, like any other landowner, owes a duty to exercise reasonable care under the circumstances to persons on its land." (quoting *Raspente v. Nat'l R.R. Passenger Corp.*, 111 F.3d 239, 242 (2d Cir. 1997)).

Similarly, here, plaintiff's arguments about the distinct duties of health care providers is inapt, given that those duties for example concern the *providing of health care services*, not records. As for plaintiff's argument that "[p]ublic policy requires disclosure of medical information to the person involved," Brief for Appellant at 41 (quoting *Cook v. Optimum/Ideal Mgrs., Inc.*, 473 N.E.2d 334, 340

(Ill. Ct. App. 1984)) (citing *Cannell v. Med. & Surgical Clinic, S.C.*, 315 N.E.2d 278 (Ill. Ct. App. 1974)), these cases actually support NYPQ's argument. The Court in *Cook rejected* the plaintiff's claim that a failure to disclose medical reports under the Illinois Workers' Compensation Act rose to a duty of care. *See Cook*, 473 N.E.2d at 341. Moreover, in *Cannell*, the Illinois Court of Appeals specifically held that "the physician's records themselves need not be turned over to the patient." *Cannell*, 315 N.E.2d at 280 (citations omitted).

Next, plaintiff cites *Ross v. Cmty. Gen. Hosp.*, 541 N.Y.S.2d 246 (App. Div. 1989) in support, but *Ross* also does not aid plaintiff. Plaintiff refers to the "fiduciary relationship between physician and patient" such that "intentional concealment of material facts itself may be sufficient to create an estoppel," *id.* at 249 (citation omitted), however, that language concerns a statute of limitations argument, not direct tort liability. The Appellate Division also ruled that "the proposed fraud claim alleges nothing more than the physician defendants' concealment of their own malpractice, which alone does not give rise to a cause of action for fraud or deceit separate from the customary action in malpractice." *Id.* at 250 (citing *Simcuski v. Saeli*, 377 N.E.2d 713, 718 (N.Y. 1978)). The same is true of plaintiff's citation to *Garone v. Roberts' Technical & Trade School, Inc.*, 366 N.Y.S.2d 129 (App. Div. 1975). The plaintiff there alleged a claim of lack of informed consent, which under New York law, is a form of medical malpractice. *See SanMiguel v. Grimaldi*, ___

N.E.3d ___, ___, 2025 N.Y. LEXIS 1767, at *12, 2025 WL 2955744 (N.Y. Oct. 21, 2025). Plaintiff does not plead a claim for medical malpractice here, A 31, so again, these cases are of no help to her.

Next, plaintiff argues that the doctrine of respondeat superior affords her a basis of liability against hospitals. *See* Brief for Appellant at 43. She cites, for example, *D'Elia v. Menorah Home & Hosp. for the Aged & Infirm*, 859 N.Y.S.2d 224 (App. Div. 2008) in support. However, that claim again was for medical malpractice. *See id.* Where, as here, there is no basis for direct liability, there can be no liability by respondeat superior. *See Karaduman v. Newsday, Inc.*, 416 N.E.2d 557, 564 (N.Y. 1980).

Finally, plaintiff argues that she pleaded a claim "for breach of fiduciary duty due to the fact [that NYPQ] violated [her] privacy." Brief for Appellant at 44 (citing *Perry v. Rockmore*, 228 N.Y.S.3d 753 (App. Div. 2025). *Perry* also does not support plaintiff's claim. As *Perry* aptly notes, "[i]n New York, 'the right of privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy.'" *Id.* at 754 (quoting *Howell v. N.Y. Post Co., Inc.*, 612 N.E.2d 699, 703 (N.Y. 1993)) (citing *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389, 392–93 (N.Y. 2018)). "Civil Rights Law §§ 50 and 51 'were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more.'" *Lohan*, 97 N.E.3d at 393 (quoting *Arrington v. N.Y. Times Co.*, 434

N.E.2d 1319, 1321 (N.Y. 1982)).[5] Plaintiff made no such allegations on the part of NYPQ (or any defendants). As such, plaintiff's complaint fails to plead a claim for breach of fiduciary duty.

**G. Plaintiff's proposed second amended complaint fails to plead a claim for fraud.**

"Under New York law, the elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Chenayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir. 1987)). Of course, in cases alleging fraud, Federal Rule of Civil Procedure 9(b) requires pleading with particularity "the circumstances constituting fraud." "Under Rule 9(b)'s particularity requirement, the plaintiff must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Olsen v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

[5] The New York State Legislature has since added section 50-f of the Civil Rights Law for the right of publicity of a deceased personality or deceased performer, and sections 52-a, 52-b, 52-c, and 52-d, which concern unwarranted video surveillance in residential premises, the publication of an intimate or personal image, or sexually explicit depiction of an individual, but plaintiff does not allege any such conduct in this case on the part of NYPQ.

"Although 'malice, intent, knowledge and other condition of mind of a person may be averred generally,' Fed. R. Civ. P. 9(b), this leeway is not a 'license to base claims of fraud on speculation and conclusory allegations.'" *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 186 (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks omitted)). "'Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent,' which may be established 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Acito*, 47 F.3d at 52). "To raise a strong inference of fraudulent intent by motive and opportunity, a defendant must have 'benefitted in some concrete and personal way from the purported fraud.'" *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 401 (E.D.N.Y. 2018) (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).

As NYPQ asserted in its original motion to dismiss, *Radin v. Tun*, No. 12 Civ. 1393 (ARR) (VMS), 2015 U.S. Dist. LEXIS 102095 (E.D.N.Y. July 17, 2015) is squarely on point. In *Radin*, the plaintiff alleged that the New York City Department of Health and Mental Hygiene attempted to undertake psychiatric care of the plaintiff without her consent, did not follow proper protocol for providing psychiatric care for recalcitrant persons, and created false records regarding her care and treatment.

*Id.* at *8–9. The District Court concluded that these claims were for common-law fraud. *Id.* at *55.

The District Court further concluded that the "[p]laintiff's allegations fail to state a claim for common law fraud and also do not meet the requirements of Rule 9(b)." *Id.* The Court continued, "[the] [p]laintiff complains of allegedly false medical records without specifying the particular misrepresentations or omissions made in those records, and when they were made. She also did not address the issue of reliance or identify the injury the alleged acts caused." *Id.* at *56; *see also Holmes v. Apple, Inc.*, No. 17 Civ. 4557 (ER), 2018 U.S. Dist. LEXIS 122792, 2018 WL 3542856 (S.D.N.Y. July 23, 2018) (dismissing complaint alleging fraud claim for lack of particularity in who made the false representations and what the representations were).

Similar to *Radin*, plaintiff did not identify a single purported statement or representation made by NYPQ that plaintiff alleges was fraudulent, beyond the vague generality that NYPQ was a "credible medical provider[]" and that it "follow[ed] federal and state laws." A 123. This vague assertion does not identify the speaker of any such statement, beyond identifying NYPQ in general. For example, plaintiff alleged that "to cover-up for their fraudulent activities, [hospital defendants] mindlessly mimicked false stories about [plaintiff's] mental health created by the DB/Wilder team, even though the false claims about [plaintiff]'s

mental health are based on fake messaging accounts Wilder set up in" plaintiff's name without her "knowledge or consent, and various other ridiculous lies." A 53. Again, plaintiff does not identify who on behalf of NYPQ allegedly made such a statement. She just references NYPQ in general, and this allegation falls well short of satisfying the particularity requirement of Rule 9(b).

Moreover, plaintiff fails to plead where and when these statements were made, which is part of a broader problem with plaintiff's complaint—her lack of dates for many of the alleged incidents with the hospital defendants fail to alert defendants to when these alleged acts or omissions occurred. Plaintiff alleges that NYPQ allegedly deceived and lied to her "from 2017 or 2018 to 2022." A 153. Much more particularity is required for fraud, not the least of which so that it could be identified whether plaintiff has even timely brought her claim for fraud.

As the report and recommendation noted, plaintiff on the proposed second amended complaint still failed to "identify any specific fraudulent statements or omissions with the particularity required under Rule 9(b)." A 41. The Court explained that "[m]uch of the material in the proposed Second Amended Complaint is wholly irrelevant to this action" or "largely duplicative of the fraud claims th[e] [C]ourt already found insufficient." *Id.* Plaintiff again "aver[red] generally that defendants [including NYPQ] purposefully deceived her, falsified her medical records, lied and destroyed evidence, concealed 'information,' and made false

reports," but as was the case in the dismissed first amended complaint, "no specifics are provided as to the statements that were allegedly fraudulent, who made them, or what made the statements fraudulent." *Id.* Magistrate Levy noted that the only new factual allegation of fraud in the proposed second amended complaint concerned Dr. Huang, an employee of codefendant Lenox Hill, and his statement to "the Wilder team" that plaintiff presented to Lenox Hill for a rape kit. *Id.* But even as to that allegation, plaintiff did not state when the statement was made or why it was fraudulent, and in fact she alleges that she did in fact present to Lenox Hill for a rape kit—in other words, plaintiff's own complaint alleges that such statement would be a *true* statement. *Id.*

As the District Court concluded, plaintiff's objection amounted to stating that "it was a 'lie' when the [report and recommendation] concluded that she could have pleaded additional facts to support her fraud claims," and that "[c]learly . . . the Report relied on *ex-parte* information and false claims." A 25. These assertions are meritless and fail to satisfy the standard in Rule 9(b). Plaintiff again on appeal relies on *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017), in support, but this case is easily distinguishable. In *Chorches*, the issue was whether plaintiff could "identify exact billing numbers, dates, or amounts for claims submitted to the government." *Id.* at 82. However, the plaintiff was able to allege, in sufficient detail, "specific facts supporting a strong inference of fraud." *Id.* at 82,

84 (citation omitted). This Court explained that the complaint "detail[ed] the specifics of a scheme whereby [the defendant] falsified [patient care reports] so as to certify runs as 'medically necessary' and thus render them reimbursable by the government" and it "name[d] supervisory personnel at [the defendant]'s offices in New Haven who instructed paramedics and [emergency medical technicians] to revise [patient care reports] to insert false information." *Id.* at 83.

Moreover, the complaint "provide[d] dates, both precise and approximate, with respect to many particular runs for which [the relator] was later asked to falsify a [patient care report]" and "explain[ed] both the scheme itself and the method by which [the defendant] executed the scheme: how Medicare reimbursed [the defendant] only for ambulance transports that qualified as medically necessary; how the" emergency medical technicians "and paramedics were required to complete [patient care reports] to document their runs; and how [defendant's] supervisors provided hard-copy markups (that were later destroyed) to the [emergency medical technicians] and paramedics" and "ordered them, under threat of suspension or termination, to revise field-generated [patient care reports] with false or misleading information such that runs could be certified as medically necessary." *Id.*

By contrast, as the District Court correctly noted that even if this relaxation of Rule 9(b)'s particularity requirement were permissible because the facts were "peculiarly within the opposing party's knowledge," A 26 (quoting *Chorches*, 865

F.3d at 81–82), which the District Court noted was "far from clear," this relaxation "is not a blank check: the complaint must still 'adduce specific facts supporting a strong inference of fraud,'" *id.* (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). And as the District Court further noted, plaintiff's second amended complaint provided no such specific facts supporting a strong inference of fraud. Plaintiff's newest complaint merely "regurgitates the same general accusations that th[e] [District] Court . . . already rejected—allegations that [NYPQ] 'willfully deceived' plaintiff 'in order to aid and abet Wilder,' that [it] 'sought to take advantage of and deceive' plaintiff by 'concealing information, and purposefully and willfully misleading' her," and "that [it] 'falsely reported' to plaintiff that [it] did not release her medical records without authorization." *Id.* Even on appeal, plaintiff's claims regarding an "agent" and *ex-parte* communications, Brief for Appellant at 47–48, are nothing more than a vein attempt to sidestep this particularity requirement.

Next, plaintiff argues on appeal that in *Chorches*, "the court and Appellee specified what information was missing from Appellant's fraud cause of action" and here, the District Court and defendants did not specify which information was missing "even though listing missing information is standard." Brief for Appellant at 47. Plaintiff cites no authority in support of this conclusion, and respectfully, plaintiff is simply wrong. It is neither defendants' job nor the court's job to tell

plaintiff how to plead a cause of action. As for the court's job, besides the fact that the court is prohibited from providing legal advice to pro se litigants, *see Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013), such advice would also clearly constitute a prohibited advisory opinion, *see generally Whole Woman's Health v. Jackson*, 595 U.S. 30, 39–40 (2021). As such, plaintiff's argument is without merit.

**H. Plaintiff's proposed second amended complaint fails to plead a claim for fraudulent concealment.**

Turning next to the fraudulent concealment claim, "[u]nder New York law, a claim for fraudulent concealment requires a plaintiff to establish '(1) that the defendant had a duty to disclose certain material information but failed to do so; (2) that the defendant then made a material misrepresentation of fact;" (3) that "said misrepresentation was made intentionally in order to defraud or mislead; (4) that the plaintiff reasonably relied on said misrepresentation; and (5) that the plaintiff suffered damage as a result." *Clark v. New York City Hous. Auth.*, No. 20 Civ. 251 (PAE) (GWG), 2022 U.S. Dist. LEXIS 165555, at *17, 2022 WL 4229386 (S.D.N.Y. Sept. 14, 2022) (quoting *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 30 (App. Div. 2012)); *accord Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 152 (2d Cir. 1993). Plaintiff still must comply with the particularity requirements in Rule 9(b). *See, e.g.*, *Phhhoto Inc. v. Meta*

*Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024); *Armstrong v. McAlpin*, 699 F.2d 79, 88–89 (2d Cir. 1983).

Plaintiff has again failed to plead with particularity what misrepresentations were made, as well as the facts to support that the misrepresentation was made intentionally in order to defraud or mislead plaintiff. A 150–51. Plaintiff alleges that she "proved" the Hospital defendants "lied in legal filings." A 163. However, plaintiff does not actually make accurate reference to a single filing NYPQ made which it, for example, "claimed [that] criminal revisions of Plaintiff's medical records constituted continuity of care." *Id.* It is unclear where plaintiff read this statement, but it was not in any NYPQ filing in this case.

Plaintiff argues on appeal that "courts have ruled [that] deficiencies in pleadings were not fatal in cases involving fraudulent concealment." Brief for Appellant at 44 (citing *Slainte Invs. Ltd. P'Ship v. Jeffrey*, 142 F. Supp. 3d 239, 262 (D. Conn. 2015)). Similar to her argument regarding the *Chorches* case, plaintiff overreads the quote that a plaintiff cannot "identify with precision the dates on which the . . . actions allegedly constituting fraudulent concealment took place is not fatal." *Id.* (quoting *Slainte Invs. Ltd. P'Ship*, 142 F. Supp. 3d at 262). Plaintiff did not provide *any* factual detail as to NYPQ's conduct in allegedly fraudulently concealing her medical records.

By contrast, in the *Slainte* case cited by plaintiff, the defendant allegedly provided the plaintiff with a May 10, 2009 letter in which the defendant "asserted that [an entity for which the defendant claimed to have established to seek investments] had made $1.8 million in profits and that he was reinvesting those funds." *Slainte*, 142 F. Supp. 3d at 261. The plaintiff alleged that the defendant "fraudulently induced its investments through an elaborate 'pyramid scheme' in which he diverted investors' funds for his personal use to fund a lavish lifestyle." *Id.* at 243. Moreover, the plaintiff alleged that the defendant wrote this letter "as part of a scheme in which he simply renewed his misrepresentations as to his purpose and added new details about the positive performance of the fund" and that "[t]hese new misstatements of fact were made not only to defraud and mislead [the plaintiff] and other investors into giving him even more money but to assure through additional acts of frauds that he concealed the fact that the original investment was now appropriated to the defendant's ongoing criminal enterprise." *Id.* at 261 (citation and internal quotation marks omitted).

By contrast, here, plaintiff's complaint provides nowhere near such particularized detail as required by Rule 9(b). Even now on appeal, the most detail that plaintiff has proffered for "the true person" allegedly responsible for the fraudulent concealment is "someone in the legal department." Brief for Appellant at 45. This falls well far short of Rule 9(b)'s particularity requirement.

Plaintiff's citation to *U.S. ex rel. Tiesinga v. Dianon Sys.*, 231 F.R.D. 122 (D. Conn. 2005) does not save her complaint. The Connecticut District Court noted that "courts have relaxed Rule 9(b)'s heightened pleading requirements in cases involving complex fraudulent schemes or those occurring over a lengthy period of time and involving thousands of billing documents." *Id.* at 123. As the District Court correctly concluded, here, "plaintiff has not pleaded *facts* to suggest that she was the victim of a 'complex fraudulent scheme.'" A 27 (citing *Gov't Emps. Ins. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 U.S. Dist. LEXIS 57715, 2022 WL 939717, at *7 (E.D.N.Y. Mar. 29, 2022) (emphasis added). Even in plaintiff's brief now, plaintiff states that she "has been the victim of a complex scheme, which involved concealment of information and purposeful omissions over a long period of time." Brief for Appellant at 45. But these are not *facts*. They are *legal conclusions*. The Supreme Court has made clear that plaintiffs are not entitled to a presumption of truth for legal conclusions and that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see Twombly*, 550 U.S. at 555, 565–66.

In any event, as the District Court noted, "even when the standards of Rule 9(b) are loosened, 'a claim cannot be based on mere speculation or conclusory allegations, but must present facts that support 'a strong inference of fraud.'" A 27 (quoting *Landow*, 2022 U.S. Dist. LEXIS 57715, 2022 WL 939717, at *7; *Wexner*,

902 F.2d at 172). For all of the second amended complaint's length, it still does not "give rise to such an inference because [it is] supported by only generalized statements." A 27 (citing *Wexner*, 902 F.2d at 172). For example, plaintiff's second amended complaint includes entirely irrelevant swaths of allegations about Jeffrey Epstein, Harvey Weinstein, Ghislaine Maxwell, Dr. Robert Hadden, Dr. Larry Nasser, and President Trump. A 51, 57, 176, 213. As *Wexner* noted, this relaxation of Rule 9(b)'s pleading requirements "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." 902 F.2d at 172. To that end, "[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* (citing *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987); *Modern Settings v. Prudential-Bache Sec.*, 602 F. Supp. 511, 514 (S.D.N.Y. 1984)).

In *Wexner*, for example, the Second Circuit held that "[t]here is . . . no meaningful support from which it can reasonably be inferred that . . . market professionals were aware of [the plaintiff]'s . . . efforts [to sell stock] . . . result[ing] from [the defendant]'s willful, knowing, or reckless disclosure of [the plaintiff]'s plans." 902 F.2d at 172. Similarly, here, plaintiff does not allege specific facts to suggest a strong inference of fraud on the part of NYPQ, or the fraudulent

concealment of some alleged second set of medical records. Thus, these allegations do not plead a claim upon which relief could be granted.

**I. Plaintiff's proposed second amended complaint fails to plead a claim intentional infliction of emotional distress.**

To state a claim for intentional infliction of emotional distress, "a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional damages." *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (citing *Howell*, 612 N.E.2d at 702). This Court has made it clear that "[t]o meet this standard, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized' society." *Id.* (quoting *Murphy v. American Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)).

As the District Court noted, plaintiff's complaint fails to allege extreme and outrageous conduct on the part of NYPQ. A 28. It aptly noted that "[i]t is a high bar, and it is one that courts have found unmet both in circumstances like the ones pleaded here and in circumstances more egregious than the ones pleaded here." *Id.* (citing *Doe v. Cmty. Health Plan-Kaiser Corp.*, 709 N.Y.S. 2d 215 (App. Div. 2000) (affirming dismissal of claim for intentional infliction of emotional distress based on disclosure of medical information contain in patient file for psychiatric social worker

as insufficient to allege extreme and outrageous conduct); *Chanko v. Am. Broadcasting Co., Inc.*, 49 N.E.3d 1171 (N.Y. 2016) (holding that filming a patient's medical treatment and death in hospital emergency room without consent and then broadcasting it failed to allege extreme and outrageous conduct)); *see also Doe v. Am. Broadcasting Co.*, 543 N.Y.S.2d 455 (App. Div. 1989) (holding that broadcasting identifiable details of rape victims despite assurances of anonymity failed to allege sufficiently extreme and outrageous conduct).

To that end, plaintiff's allegations of failure to take adequate medical histories, improper diagnoses, fraudulent creation of medical records, and denial of access to health information simply does not meet this exacting standard. *See, e.g.*, *Cardona v. Cmty. Access, Inc.*, No. 11-cv-4129 (MKB), 2013 U.S. Dist. LEXIS 10778, at *34, 2013 WL 304519 (E.D.N.Y. Jan. 25, 2013) (holding that allegation of being "forced to defend themselves against fabricated allegations/charges" is insufficient to allege extreme and outrageous conduct for purposes of intentional infliction of emotional distress).

Next, plaintiff argues on appeal, in addition to alleging that a United States Magistrate Judge relied on "secret findings of fact," that "[t]aken together, the acts stated in the [second amended complaint] amount to a malicious campaign of harassment which is sufficient as a matter of law to" plead a claim for intentional infliction of emotional distress. Brief for Appellant at 48–49 (citing *Rich v. Fox*

*News Network, LLC*, 939 F.3d 112, 117 (2d Cir. 2019)). Plaintiff cites *Rich* and *Scollar v. City of New York*, 74 N.Y.S.3d 173 (App. Div. 2018) in support. Both cases are easily distinguishable from this case.

First, in *Rich*, the plaintiffs alleged specific facts plausibly pleading "a campaign of emotional torture" that was attributable to the defendant. *Rich*, 939 F.3d at 123. This Court explained that the plaintiffs' theory was that "[i]n order to publish a knowingly false article accusing [the plaintiffs' murdered son] of leaking . . . [Democratic National Committee] emails, [two employees of defendant Fox News who were defendants themselves] needed a reliable source" for the article. *Id.* One of the Fox News employees, "through lies, religious appeals, and financial support," convinced the plaintiffs to hire a third Fox News employee, who, in turn, "regurgitated . . . unsubstantiated information" and providing a named source (himself) for the Fox News article, and lending credence to the article because the article emphasized the third Fox News employee's connection to the plaintiffs. *Id.*

Similarly, in *Scollar*, the plaintiff alleges that the defendant DeBellis, a sergeant with the New York City Police Department, unlawfully entered the plaintiff's home in violation of the Fourth Amendment, threatened the plaintiff to call the family court judge presiding over the plaintiff's child custody case to let the judge know that she gave custody to the wrong parent, and that she called the Administration for Children's Services, accused the plaintiff of being a neglectful

mother, and threatened the plaintiff that she was going to call them again. 74 N.Y.S.3d at 175–77. Plaintiff also alleged that DeBellis did in fact contact the family court judge to "inappropriately attempt[] to influence her decision" and that DeBellis also contacted the child's law guardian to claim that the child was at imminent risk. *Id.* at 176. The plaintiff alleged that DeBellis did all this to aid DeBellis's friend, who was the child's noncustodial parent, with whom the plaintiff alleged DeBellis had a personal relationship. *See id.* at 175–77 & n.4.

The First Department concluded that these allegations showed a deliberate and malicious campaign of harassment and intimidation, which was sufficient to plead a claim for intentional infliction of emotional distress. *See id.* at 177–78. Additionally, the Court explained that "the outrageous nature of the conduct can be established when it arises from the abuse of a position of power, as is alleged here." *Id.* at 178 (citations omitted). There again, the allegations against the City of New York were clearly attributable to it as they concerned its employee, and the plaintiff sued the City of New York for negligent supervision and retention. *See id.* at 179–80.

By contrast, here, plaintiff argues that she has "alleged a campaign of emotional torture" because "the Wilder and DB teams [who are not parties to this action or appeal] have attempted to undermine and discredit [plaintiff] by falsely claiming [she] has a series of mental health disorders she does not have." Brief for

Appellant at 49. Moreover, she alleges that when she went to the hospital defendants, including NYPQ, the "DB/Wilder team contacted each [hospital defendant] and made false and malicious claims about [plaintiff] without [her] consent." *Id.* None of these allegations are alleged against NYPQ. Plaintiff alleges that NYPQ (and hospital defendants) "set[] up a fraudulent system in which the [hospital defendants] prepared two separate sets of medical records" and denied her access to the hidden set, and did not send her a denial of access letter. *Id.* at 49–50. In addition to the difference in publicly implying that a murder victim committed tortious (and likely criminal) conduct and allegedly fraudulently maintaining medical records in terms of extreme and outrageousness, the overwhelming majority of the allegations against NYPQ are that they failed to act and that plaintiff suffered emotional distress as a result. This falls well short of sufficient pleaded facts to state a claim for intentional infliction of emotional distress.

*Gray v. Schenectady City School Dist.*, 927 N.Y.S.2d 442 (App. Div. 2011) is instructive on this point. In *Gray*, the plaintiffs sued defendants Schenectady City School District and Steven Raucci, its director of facilities. *Id.* at 444. The plaintiffs alleged that Raucci "used the power and resources of his position with [the Schenectady City School District] 'to conduct a reign of terror' upon [the] plaintiffs, including vandalism of their property and threats to their safety. *Id.* The complaint alleged that Raucci "vandalized [the] plaintiffs' property on five separate occasions,

and utilized [the Schenectady City School District]'s vehicles and employees to harass and intimidate them." *Id.* at 445. The plaintiffs alleged that this "included menacing phone calls and personal threats to their physical safety." *Id.* The Court noted that defendant Raucci never appeared in the action and was convicted of 18 felony counts, including several for conduct against the plaintiffs and their property during the time when he was employed by the Schenectady City School District. *Id.* at 444 n. The Third Department concluded that these allegations were sufficient to plead a cause of action for intentional infliction of emotional distress as against defendant Raucci. *See id.* at 445.

However, critically, as to the defendant Schenectady City School District, the Third Department concluded, "[d]espite this sufficient claim against Raucci, [the Schenectady City School District]'s mere inaction after receiving complaints about Raucci's behavior—which allegedly allowed him to continue to engage in this behavior in spite of the notice regarding his actions—cannot be considered the type of extreme and outrageous conduct . . . so as to state a cause of action against [the Schenectady City School District] for *its own conduct*." *Id.* (citations omitted and emphasis added). Moreover, the Court held that the Schenectady City School District was not vicariously liable for Raucci's alleged torts because they were outside the scope of his employment. *See id.*

The rationale of *Gray* is directly on point. Plaintiff's allegations largely consist of NYPQ's *inaction* in *failing* to release her second set of records or a denial of access letter. *See* Brief for Appellant at 49–50. And here, there is even less of a connection between the "DB/Wilder Team" and NYPQ. Plaintiff does not allege that the "DB/Wilder Team" were employees of NYPQ or any basis for vicarious liability. And again, the "DB/Wilder Team" are nonparties on this action. Furthermore, unlike in *Scollar*, plaintiff notably did not allege that NYPQ committed "intimidati[ng]" conduct, nor did she provide any factual support that they abused any position of power.

Finally, plaintiff alleges that NYPQ failed to "comply with their affirmative duties under law." Brief for Appellant at 50. However, "[t]he mere commission of an unlawful act is not, however, always sufficient to support a claim for intentional infliction of emotional distress." *Sharp v. CNA Lloyds*, No. H-92-2308, 1992 U.S. Dist. LEXIS 21143, at *12 (S.D. Tex. Dec. 22, 1992). As such, plaintiff has failed to plead a claim for intentional infliction of emotional distress and has failed to plead any claims upon which relief could be granted.

**J. Plaintiff's Arguments Regarding Futility**

Plaintiff argues on appeal that she "requested leave to file the Second Amended Complaint . . . pursuant to Rule 18(a), Rule 15(a), and Rule 15(d) of the Federal Rules of Civil Procedure" on the grounds that, "since plaintiff filed her First

Amended Complaint . . . , new facts have been discovered and events have occurred that are material to this action." Brief for Appellant at 51. None of these arguments are availing. First, Rule 15(a)(1) only permits a party to amend their pleading *once* as a matter of course. It is undisputed that plaintiff has already amended her complaint once. A 22. Under Rule 15(a)(2), she must seek court leave to file, which the court "should freely give . . . when justice so requires." Nevertheless, as was discussed above, "leave to amend a complaint may be denied when amendment would be futile." *Nielsen*, 746 F.3d at 62 (quoting *Tocker*, 470 F.3d at 491).

As for plaintiff's argument regarding Rule 15(d), this Court has also opined that courts may deny a motion to supplement a pleading as well based upon futility and bad faith. *See NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256 (2d Cir. 2018); *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). For the same reasons as discussed above under Rule 15(a)(2), plaintiff's proposed second amended complaint fails to plead a claim for relief, and as such, any Rule 15(d) motion should be denied. *See Cohen v. United States*, 23-cv-08099 (NSR) (VR), 2025 U.S. Dist. LEXIS 178326, at *9 n.6, 2025 WL 2611680 (S.D.N.Y. Sept. 9, 2025); *CFPB v. MoneyGram Int'l, Inc.*, 22 Civ. 3256 (KPF), 2025 U.S. Dist. LEXIS 12747, 2025 WL 297389, at *5 (S.D.N.Y. Jan. 24, 2025).

As for plaintiff's argument regarding Rule 18(a), joinder of claims is not at issue here. Under the rule, "[a] party asserting a claim, counterclaim, crossclaim, or

third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." This Court has made clear that amending an existing complaint to add claims to it is accomplished under Rule 15, "not by attempting to utilize Rule 18." *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir. 1994). As such, any motion under Rule 18(a) should also be and was properly denied.

## <u>Point II</u>

### Alternatively, plaintiff's motion for leave to file a second amended complaint should be denied as it was made in bad faith.

As this Court recognized, leave to amend a pleading may also be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Yerkyn v. Yakovlevich*, 164 F.4th 224, 227 (2d Cir. 2026) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). In addition to futility, and as an alternate ground for affirmance, plaintiff's motion should have been denied as in bad faith. *See* DA 201–DA 228.

As was noted above, plaintiff's proposed second amended complaint included offensive and irrelevant allegations attempting to tie hospital defendants to Jeffrey Epstein, Harvey Weinstein, Ghislaine Maxwell, Dr. Robert Hadden, Dr. Larry Nasser, and President Trump. A 51, 57, 176, 213. Plaintiff alleges with no substantiation that defendants attempted to "aid and abet a sex trafficking operation . . . reflect[ing] a level of stupidity and craziness that are difficult to believe." A 47.

Plaintiff refers to her medical records from "Hospital Defendants" as "stupid and farcical," A 155, refers to a Queens County Supreme Court Justice in a state action as "obviously a corrupt, stupid liar that lied to aid and abet the Wilder team" and references a "corrupt lawyer hired by Defendant NYU Langone," A 205. Plaintiff refers to the requirements in a Northern District of Georgia order from Judge Geraghty as "absurd and ridiculous," A 205–06, and alleges that her "claims for fraud, fraudulent concealment, and intentional infliction of emotional distress . . . were improperly dismissed by the Lower Court" because of "a series of lies told by [hospital defendants] and the DB/Wilder team, on an *ex-parte* basis," Brief for Appellant at 10.

Furthermore, in her objections to the report and recommendation, she alleged that counsel for defendants apparently placed a phone call to judges in the Eleventh Circuit to claim that she was "mentally-ill," was a "safety risk" and that she "had signed an advanced directive and Power of Attorney giving a psychotic 'agent' power to harm [her]." A 270. Plaintiff referred to defendants as "known liars," A 272 (emphasis removed), and that NYPQ's parent company "lied repeatedly for decades to cover-up for a sexual predator." A 272–73.[6] These fantastical, offensive,

[6] These allegations may not be considered on appeal "as proper objection generally may not raise new arguments not previously made before the magistrate judge." *Nambiar*, 158 F.4th at 359 (citing *Fischer*, 968 F.3d at 221). These statements were taken from plaintiff's affidavit in opposition to the report and recommendation, which contained further proposed changes to her second amended complaint. *See* A 266–67, 270–72.

unsupported, and most importantly, irrelevant allegations stray even beyond the understandable inexperienced drafting of a nonlawyer.[7]

"While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'" *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014) (quoting *Youngbloods v. BMG Music*, No. 07 Civ. 2394, 2011 U.S. Dist. LEXIS 1585, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011)). Plaintiff continues to drag out this litigation that has now spanned nearly three years (just in this action alone). A 7. Notably, even in her brief before this Court, plaintiff has indicated that she would be filing additional motions about issues with her medical records. *See* Brief for Appellant at 9 n.4, 17 n.8. Plaintiff has had three opportunities to plead a cause of action. Plaintiff having swung and missed the first three times has resorted to arguing that the "umpire" is corrupt and rigged for not affording her a fourth swing. At some point, plaintiff's abusive diatribe should stop. This is that stop. As such, plaintiff's request for leave to file a second amended complaint should also be denied on the ground of bad faith.

---

[7] As an aggravating factor, on October 28, 2024, plaintiff was "directed to refrain from using insulting or abusive language in her court filings" by Judge Kovner. A 15. Evidently, that direction did not stick.

## Point III

### Plaintiff's Rule 60(b) motion objections are unpreserved on appeal and in any event, are meritless.

Finally, as for plaintiff's Rule 60(b) motion, while the memorandum decision and order also denied plaintiff's Rule 60(b) motion, plaintiff cannot seek review of this claim on appeal. First, plaintiff specifically limited her grounds for appeal in her notice of appeal the decision granting dismissal and denying her leave to file a second amended complaint. A 34; *see* Fed. R. App. P. 3(c)(6) ("An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited.") Next, plaintiff did not address this argument in her opening brief. "[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief." *JPMorgan Chase Bank*, 412 F.3d at 428 (citing *O'Hara*, 294 F.3d at 67 n.5; *Knipe*, 999 F.2d at 711). Thus, plaintiff has abandoned any contentions regarding the Rule 60(b) motion on appeal.

In any event, for the reasons discussed in the decision below, plaintiff's Rule 60(b) motion was properly denied. Plaintiff mostly argued that the decision was incorrect, which is not a proper basis for a Rule 60(b) motion. A 31; *see Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964). As for her argument that "the Order shows [the] Court engaged in *ex parte* communication," A 32, as the District Court properly noted, "[t]his accusation is baseless and, at any rate, is not tied to any ground for

relief under Rule 60(b), *id.* (citing *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210–11 (2025)). Because Rule 60(b) "allows extraordinary judicial relief," it can be "invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Plaintiff argued no such exceptional circumstances. Thus, plaintiff's Rule 60(b) motion was properly denied as well.

## Conclusion

The District Court's decision should be affirmed in its entirety. Plaintiff's motion for leave to file a second amended complaint was properly denied as it was futile. Plaintiff utterly failed to plead a single claim upon which relief could be given. Despite its 182 pages in length, plaintiff utterly failed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a)(2), namely, specific factual allegations concerning NYPQ and defendants. This Court's conclusion in *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) applies in particular fashion to plaintiff's proposed second amended complaint here: "[t]he problem with [the pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile." Finally, any argument regarding plaintiff's Rule 60(b) motion is unpreserved

for appeal, but in any event, the District Court properly denied her Rule 60(b) motion as well.

For the foregoing reasons, defendant-appellee New York-Presbyterian Queens respectfully requests that this Court affirm the memorandum and order of the District Court for the Eastern District of New York in its entirety, together with such other and further relief, which may be just and proper.

Dated: April 16, 2026
Albany, New York

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: ______________________

STEVEN V. DEBRACCIO, ESQ.
*Attorneys for Defendant-Appellee*
*New York-Presbyterian Queens*
200 Great Oaks Blvd., Suite 228
Albany, New York 12203
Wilson Elser File No. 21975.00020

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 13,921 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: April 16, 2026
Albany, New York

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: ____________________

STEVEN V. DEBRACCIO, ESQ.
*Attorneys for Defendant-Appellee*
*New York-Presbyterian Queens*
200 Great Oaks Blvd., Suite 228
Albany, New York 12203
Wilson Elser File No. 21975.00020